UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: _____

**JANE DOE,**

      **Plaintiff,**

      v.

**Peak Properties, Inc. D/b/a America's Best Inn Jacksonville; Guru Krupa Charmi, LLC, d/b/a America's best Inn Jacksonville; and G4 Property Owner LLC, f/k/a Generation Properties, D/b/a Motel 6.**

      **Defendants.**
_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JANE DOE sues Defendants **Peak Properties, Inc. d/b/a America's Best Inn Jacksonville; Guru Krupa Charmi, LLC, d/b/a America's Best Inn Jacksonville; and G4 Property Owner LLC, f/k/a Generation Properties, d/b/a Motel 6** and alleges:

### SUMMARY

1. Plaintiff Jane Doe is a survivor of sex trafficking.[1] Jane Doe was

---

[1] Contemporaneous with this complaint, Ms. Doe is filing a motion to proceed anonymously.

1

trafficked for sex in Duval County, Florida from approximately 2011 to March of 2015.

2. At all times material to this action Peak Properties, Inc., doing business as America's Best Inn Jacksonville, located at 8220 Dix Ellis Trl., Jacksonville, FL 32256, enabled the sexual trafficking and victimization of Jane Doe in violation of the Trafficking Victims Protection Reauthorization Act 2003, 18 U.S.C. §1595 ("TVPRA").

3. At all times material to this action Guru Kruma Charmi LLC, doing business as America's Best Inn Jacksonville, located at 8220 Dix Ellis Trl., Jacksonville, FL 32256, enabled the sexual trafficking and victimization of Jane Doe in violation of the Trafficking Victims Protection Reauthorization Act 2003, 18 U.S.C. §1595 ("TVPRA").

4. At all times material to this action G4 Property Owner LLC, former known as Generation Properties II, LLC, doing business as Motel 6, located at 82285 Philips Hwy, Jacksonville, FL 32256, enabled the sexual trafficking and victimization of Jane Doe in violation of the Trafficking Victims Protection Reauthorization Act 2003, 18 U.S.C. §1595 ("TVPRA").

5. Defendants knowingly benefitted financially from participation in the sex trafficking scheme of Jane Doe.

6. This lawsuit seeks to hold Defendants liable for their role in Jane Doe's

trafficking because Defendants (i) provided a venue for her trafficking to occur; (ii) blatantly ignored the problem of Jane Doe being trafficked; and (iii) did these things in order to make money. Defendants put their own profits ahead of the health and safety of Jane Doe, and by doing so, consciously engaged in the venture of sex trafficking.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this action arises under the Constitution, laws, or treaties of the United States.

8.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought. Specifically, Plaintiff was trafficked for sex at hotels located in Duval County, Florida. In addition, Defendants' principal place of business is in the jurisdiction where this action is brought.

## PARTIES

9.   Jane Doe is an individual over the age of eighteen (18) and resides in Duval County Florida. Given the nature of the case, Jane Doe is identified by a pseudonym to prevent public disclosure of her name. She is a victim of sex trafficking as that term is defined under the TVPRA and is therefore protected under the applicable provisions

of the TVPRA.

10. At all times material hereto, Defendants were Florida licenses corporations, authorized to do business in Florida, with principal places of business in Florida.

11. Defendants were the owners and operators of the locations where Jane Doe's trafficking took place.

12. Jacksonville Florida is subject to the jurisdiction of this Court.

13. Defendants may be served through the registered agent for service.

14. Should the names of Defendants be incorrect by unfiled corporate documents, Plaintiff will amend this Complaint to show the true names of the Defendants when their names have been ascertained. Plaintiff alleges upon information and belief that these Defendants may in some manner be responsible for the acts or omissions alleged herein, and that they may in some manner be liable to Plaintiff for injuries and damages resulting from those acts or omissions.

15. At all times material, between 2012 and March 2015, Defendants, by and through their agents, employees, officers, staff, administrators, representatives, servants, and personnel, were acting jointly and severally with each other, and were engaged in a joint undertaking in a joint enterprise for a common purpose and in a common effort for the economic benefit of each of them. Defendants are thereby jointly and severally liable and responsible for the

damages sustained by Jane Doe.

16. While Jane Doe's trafficking took place in 2011 through March of 2015, this case is not barred by the statute of limitations because this action was brought within ten years of the trafficking, as permitted by the applicable statutes before her rescue.

## RELEVANT HOTEL INDUSTRY STANDARDS

17. It is well known that hotels are highly favored by sex traffickers because they provide privacy and anonymity for the purchasers of sex to meet the child/young woman being exploited. *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2457 (2015).

18. In an effort to disrupt human trafficking at hotels, in 2004, the organization End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Protection Code of Conduct ("the Hotel Code of Conduct") in the United States.[2]

19. The Hotel Code of Conduct is a joint venture between the tourism and hospitality sectors and ECPAT-USA.[3] The Hotel Code of Conduct is well known in the hospitality industry for establishing a framework for companies to provide

---

[2] ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), *available at*: https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacancy_Report.pdf.

[3] *Id*.

5

training, education, and collaboration with other stakeholders to help prevent potential abuse.[4] It is a voluntary set of business principles that hotels can implement to prevent human trafficking.[5]

20.  The Hotel Code of Conduct identifies six (6) steps companies can take to identify and prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate, and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

21.  The Hotel Code of Conduct includes an "Anti-Trafficking Hotel Checklist" to help hotels identify red flags of human trafficking.

22.  With proper training and other reasonable security measures, Austell, as well as other hotel owners, managers, operators and employees could prevent the trafficking of persons on their Property. The well-known and easily identifiable signs

---

[4] https://www.ecpatusa.org/blog/tag/The+Code
[5] *Id.*

6

of sex trafficking, or "red flags" of sex trafficking, include:

    a.    Paying for rooms with cash or pre-paid credit cards;

    b.    A guest lingering just outside the room for long periods of time (i.e., the trafficker waiting outside as the johns are inside the room abusing victims like Jane Doe);

    c.    Multiple guests coming and going from the hotel or motel—particularly a large stream of adult males—without ever checking into a room;

    d.    Excessive foot traffic going in or out of a particular room or area of the hotel or motel;

    e.    Staying for multiple days with few possessions;

    f.    Requesting a room overlooking the parking lot;

    g.    Frequently requesting new linens, towels, and refusing housekeeping services;

    h.    Guests frequently entering and emerging from rooms with no luggage or identification.

23. Hotels are urged to sign the Hotel Code of Conduct and commit to taking action against sex trafficking in their hotels.

24. In addition to the Hotel Code of Conduct, there are abundant resources available to hotels so that they can train their staff to identify and act upon red flags

such as these.

25. Defendants were aware of the Hotel Code of Conduct and the steps that could be taken to identify and prevent sex trafficking, but as shown below, Defendants refused to utilize or implement any measures to identify the red flags for human trafficking and prevent it from taking place on their property.

## **JANE DOE'S TRAFFICKING**

26. In approximately 2011, Ms. Doe was kidnapped by traffickers.

27. For many years thereafter the traffickers trafficked Ms. Doe for sex, rotating her amongst several hotels in Duval County Florida, including Defendants' hotels.

28. From 2012 to March of 2015, Ms. Doe was subject to repeated instances of rape, exploitation, psychological torment, physical abuse and false imprisonment at Defendants' hotels.

29. Jane Doe's traffickers forced her to place ads for her sexual services on internet sites.

30. Through force, fraud and coercion, while at Defendants' hotel, the traffickers made Jane Doe provide sexual services to adult men who paid the trafficker in exchange for those services. Jane Doe's traffickers controlled everything about Jane Doe's trafficking—they forced her to place the ads for sexual

services on internet sites like Backpage.com, they answered the phone when Johns called in response to the ads, they collected money from the Johns before they went into the hotel room, and they kept all of the money the Johns paid in exchange for raping Jane Doe.

31. In exchange for providing sex acts to whatever men the traffickers sent into Jane Doe's hotel room, the traffickers would provide food, drugs, toiletries, and occasionally clothing to Jane Doe.

32. Jane Doe's traffickers almost always made Jane Doe check into the Defendants' hotels in her own name using her identification. Occasionally, one of the traffickers, would put the room under his name. The payment method was always cash or pre-paid credit cards.

33. The traffickers rotated Jane Doe between the hotels in Jacksonville, Florida.

34. Jane Doe suffered horribly while being trafficked at Defendants' hotels. Jane Doe's traffickers beat her on a regular basis. Her traffickers rarely let her leave the hotel room. If she did leave, it was because they were watching her, were with her, or were controlling her through fear of what would happen to her if she did not return/tried to escape.

35. Jane Doe had several "regular" Johns who, for years, paid to rape her while she was at Defendants' hotel.

9

36. Jane Doe begged her traffickers to let her stop, but they forced her to allow any and all clients that arrived to do whatever the client wanted to do to Jane Doe's body. Jane Doe's traffickers were aware of the "regulars" who subjected her to physical and sexual torture and the traffickers forced her to see these men anyway.

37. Jane Doe was forced by her traffickers to allow so many men to have sex with her on a daily basis that, at first, the only relief she could find was to climb into a bath and sit in the warm water for a few minutes while she waited for the next client to arrive. On a typical day, Jane Doe's traffickers forced her to allow numerous men to rape her.

38. Jane Doe was not allowed to eat or sleep until she had seen all of the men who had appointments. It was not unusual to go for days with hardly any sleep.

39. None of the men who came to Jane Doe's room ever had luggage, a fact that should have been visible to any agent of Defendants' hotel.

40. Defendants' hotel is a property where the entrances to the motel rooms require guests and visitors to come through the lobby. Which means that numerous men coming and going from a single room for multiple days in a row would be a volume of foot traffic that would be highly visible to any of Defendants' staff.

41. Jane Doe prayed that someone working at Defendants' hotel would notice the traffickers that were always with her when she checked in and the fear in

her eyes. But no one at Defendants' hotels ever said or did anything to help Jane Doe.

42. No matter how long the stay, Jane Doe's traffickers ensured that housekeeping never came into Jane Doe's room (either by turning them away or hanging a "do not disturb" or similar placard on the door).

43. When Jane Doe would check out, the garbage can would be overflowing with used condoms and lubricant containers. Defendants' employees never did anything in response to this red-flag behavior.

## COUNT I
## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008, 18 U.S.C. §1595
## AMERICA'S BEST

44. Paragraphs 1 through 43 are realleged as though fully set forth herein.

45. Jane Doe is a victim of sex trafficking within the meaning of 18 U.S.C. §1591 and is entitled to bring a civil action under 18 U.S.C. §1595 against any individual or entity whose violations of the TVPRA proximately caused the Jane Doe to sustain physical and/or psychological injuries.

46. Jane Doe was trafficked at the Defendants', Park Properties, Inc. And Guru Krupa Charmi, LLC, America's Best Inn Jacksonville, for numerous years.

47. Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, knew or should have known that it was a hub of sex trafficking and that this crime was

11

prevalent.

48. Jane Doe's traffickers used force, fraud and coercion to make Jane Doe sell her body to strangers at Defendants', Park Properties, Inc. And Guru Krupa Charmi, LLC, hotel. Jane Doe's traffickers operated openly and brazenly at Defendants' hotel.

49. As described in paragraphs 24 to 43 above (and incorporated herein), while Jane Doe was trafficked at Defendants', Park Properties, Inc. And Guru Krupa Charmi, LLC, hotel, Jane Doe exhibited numerous well-known and visible signs of a sex trafficking victim in the common areas, of which Defendants knew or should have known, including her inappropriate appearance, screams while in the room, physical deterioration, fatigue, sleep deprivation, fear, no luggage or belongings, no control or possession of money, loitering, and monitoring and control by her traffickers.

50. While Jane Doe was trafficked at Defendants', Park Properties, Inc. And Guru Krupa Charmi, LLC, hotel, a large volume of men visited her rooms and each for short periods of time. Defendants knew or should have known that the number of daily visits by various men was obviously indicative of sex trafficking. But Defendants did nothing in response to this glaring red flag of sex trafficking.

51. Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, participated in the venture of trafficking Jane Doe by turning a blind eye to obvious

12

signs of sex trafficking and thereby providing the location for her sexual exploitation to take place. Without a "safe" location (one such as Defendants' hotel, where the hotel turns a blind eye to red flags and does nothing to prevent trafficking or protect the victim), there can be no trafficking.

52. Among other things, Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, negligently failed to train its employees, managers, housekeepers, and agents on appropriate steps to recognize and prevent sex trafficking at Defendants' hotel.

53. Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, had at least constructive knowledge of the need to maintain, secure, inspect, patrol and manage the premises, but negligently failed to do so.

54. Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, cooperation in the venture exceeded that inherent in the normal room renting transaction because Austell elected not to implement proper training of its staff and to ignore red flags, described in paragraphs 17 to 43 above and incorporated herein, that Jane Doe was being trafficked. Jane Doe exhibited red flags upon which hotel staff should have been trained to act, but they took no action. As such, Defendants, through their agents, knew or should have known that Jane Doe was being sexually trafficked. Indeed, Defendants affirmatively avoided confirming that Jane Doe was a human trafficking victim being sexually trafficked on Defendants' property.

55. Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, knowingly benefited financially from the venture. In exchange for providing a location for Jane Doe's continued sexual exploitation, Defendants, as the owner of the hotel, received monetary compensation for every night the room in which Jane Doe was sexually trafficked was rented. Defendants continued renting the room despite the red flags that called attention to human trafficking.

56. The venture in which Defendants, Park Properties, Inc. And Guru Krupa Charmi, LLC, participated affected interstate commerce.

57. As a result of Defendants', Park Properties, Inc. And Guru Krupa Charmi, LLC, violations of the TVPRA, Jane Doe has been injured, experienced physical and mental and suffering and emotional distress, and incurred damages.

**COUNT II**
**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION**
**REAUTHORIZATION ACT OF 2008, 18 U.S.C. §1595**
**MOTEL 6**

58. Paragraphs 1 through 43 are realleged as though fully set forth herein.

59. Jane Doe is a victim of sex trafficking within the meaning of 18 U.S.C. §1591 and is entitled to bring a civil action under 18 U.S.C. §1595 against any individual or entity whose violations of the TVPRA proximately caused the Jane Doe to sustain physical and/or psychological injuries.

60. Jane Doe was trafficked at the Defendant's, G4 Property Owner LLC,

14

formerly known as Generation Properties II, LLC, doing business as Motel 6, for numerous years.

61. Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, knew or should have known that it was a hub of sex trafficking and that this crime was prevalent.

62. Jane Doe's traffickers used force, fraud and coercion to make Jane Doe sell her body to strangers at Defendant's, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, hotel. Jane Doe's traffickers operated openly and brazenly at Defendants' hotel.

63. As described in paragraphs 24 to 43 above (and incorporated herein), while Jane Doe was trafficked at Defendant's, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, hotel, Jane Doe exhibited numerous well-known and visible signs of a sex trafficking victim in the common areas, of which Defendants knew or should have known, including her inappropriate appearance, screams while in the room, physical deterioration, fatigue, sleep deprivation, fear, no luggage or belongings, no control or possession of money, loitering, and monitoring and control by her traffickers.

64. While Jane Doe was trafficked at Defendant's, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, hotel, a large volume of men visited her rooms and each for short periods of time.

Defendants knew or should have known that the number of daily visits by various men was obviously indicative of sex trafficking. But Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, did nothing in response to this glaring red flag of sex trafficking.

65. Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, participated in the venture of trafficking Jane Doe by turning a blind eye to obvious signs of sex trafficking and thereby providing the location for her sexual exploitation to take place. Without a "safe" location (one such as Defendants' hotel, where the hotel turns a blind eye to red flags and does nothing to prevent trafficking or protect the victim), there can be no trafficking.

66. Among other things, Defendan, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, negligently failed to train its employees, managers, housekeepers, and agents on appropriate steps to recognize and prevent sex trafficking at Defendants' hotel.

67. Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, had at least constructive knowledge of the need to maintain, secure, inspect, patrol and manage the premises, but negligently failed to do so.

68. Defendant, G4 Property Owner LLC, formerly known as Generation

16

Properties II, LLC, doing business as Motel 6, cooperation in the venture exceeded that inherent in the normal room renting transaction because Austell elected not to implement proper training of its staff and to ignore red flags, described in paragraphs 17 to 43 above and incorporated herein, that Jane Doe was being trafficked. Jane Doe exhibited red flags upon which hotel staff should have been trained to act, but they took no action. As such, Defendants, through their agents, knew or should have known that Jane Doe was being sexually trafficked. Indeed, Defendants affirmatively avoided confirming that Jane Doe was a human trafficking victim being sexually trafficked on Defendants' property.

69. Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, knowingly benefited financially from the venture. In exchange for providing a location for Jane Doe's continued sexual exploitation, Defendants, as the owner of the hotel, received monetary compensation for every night the room in which Jane Doe was sexually trafficked was rented. Defendants continued renting the room despite the red flags that called attention to human trafficking.

70. The venture in which Defendant, G4 Property Owner LLC, formerly known as Generation Properties II, LLC, doing business as Motel 6, participated affected interstate commerce.

71. As a result of Defendant's, G4 Property Owner LLC, formerly known

17

as Generation Properties II, LLC, doing business as Motel 6, violations of the TVPRA, Jane Doe has been injured, experienced physical and mental and suffering and emotional distress, and incurred damages.

## DAMAGES

72. Plaintiff re-alleges and incorporates herein the allegations contained in the Paragraphs above as if fully reinstated.

73. Jane Doe sustained serious injuries, mental anguish, loss of enjoyment of life, inconvenience, and other damages, all of which were foreseeable and directly and proximately caused by Defendants' negligence and violations of the TVPRA.

74. Plaintiff brings each and every claim for damages permissible under the law against Defendants for injuries suffered as a result of Defendants' conduct, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law.

75. Punitive damages should be imposed upon the Defendants without limitation or cap for its actions.

76. Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Defendants, and one or more or all of the above stated acts were the proximate cause of the injuries and damages sustained by the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants and for the following:

(a) That process and summons issue requiring Defendants to appear as provided by law and to answer the allegations of the Complaint;

(b) Plaintiff be awarded actual damages in amounts to be shown at trial;

(c) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendants;

(d) Punitive damages be imposed upon Defendants;

(e) Plaintiff be awarded a trial by jury; and

(f) Plaintiff have such other relief, including taxable costs, that this Court deems just and appropriate under the circumstances.


Dated: March 24, 2025
*/s/ Scharome Wolfe*

                        SCHAROME R. WOLFE, ESQ.
                        Florida Bar No.: 0672947
                        My Legal Wolfe
                        7380 Sand Lake Rd.
                        Suite 500
                        Orlando, FL 32819
                        Telephone: (407) 340-0551
                        Facsimile: (407) 250-8496
                        *Attorneys for Plaintiff*

*Swolfe@mylegalwolfe.com*
*Pleadings@mylegalwolfe.com*